**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **WEST BEND MUTUAL INSURANCE COMPANY,** | **CASE NO. 1:21-cv-00593** |
| Plaintiff, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| **OSMIC, INC.,** *et al.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

This matter comes before the Court upon Plaintiff West Bend Mutual Insurance Company's ("West Bend") Motion for Summary Judgment filed on December 15, 2023. (Doc. No. 85.) On April 23, 2024, with the Court's leave, Hugh Osmic filed a Response to West Bend's Motion for Summary Judgment. (Doc. No. 97.) On April 26, 2024, West Bend filed a Reply in support of its Motion for Summary Judgment. (Doc. No. 98.)

On April 29, 2024, Hugh Osmic filed a Supplemental Reply Brief (Doc. No. 99), and on April 30, 2024, Hugh Osmic filed a "Verified Affidavit In Opposition" to West Bend's Motion for Summary Judgment ("Verified Affidavit") (Doc. No. 100). On May 3, 2024, West Bend filed a Motion to Strike Hugh Osmic's Sur-Reply and Affidavit ("Motion to Strike"). (Doc. No. 101.) On May 20, 2023, Hugh Osmic filed a "Verified Objection" to West Bend's Motion to Strike. (Doc. No. 102.) West Bend did not file a Reply in support of its Motion to Strike.

Accordingly, West Bend's Motion for Summary Judgment and Motion to Strike are ripe for

a decision. For the following reasons, the Court **GRANTS** West Bend's Motion to Strike and **DENIES** West Bend's Motion for Summary Judgment.

### I. Factual Background

According to the Affidavit of West Bend Senior Attorney Jennifer Seidler, on May 23, 2018, West Bend issued a Bid Guaranty and Contract Bond Agreement, bearing bond number 2385846 (the "Bond").[1] (Doc. No. 85-1 ("Seidler Aff.") at ¶ 2; Doc. No. 85-2 at PageID# 774–75.) The Bond named Defendant Osmic, Inc. as principal, West Bend as surety, and MetroHealth as obligee, and provided that Osmic, Inc. and West Bend were bound to the dollar amount of Osmic, Inc.'s contract (the "MetroHealth Contract") with MetroHealth Medical Center ("MetroHealth") for certain construction work on the Lincoln West High School at MetroHealth Renovation Project (the "Project"). (Seidler Aff. at ¶ 2; Doc. No. 85-2 at PageID# 774.)

Attorney Seidler avers that on April 4, 2017, as consideration for West Bend's issuance of the Bond, Hugh Osmic, in his individual capacity and on behalf of Osmic, Inc., "executed" with West Bend a Rapid Bond General Agreement of Indemnity ("Indemnity Agreement"). (Seidler Aff. at ¶ 3; Doc. No. 85-4 at PageID# 805.) The Indemnity Agreement[2] provides in relevant part:

> The Undersigned agree to pay to Surety upon demand:
>
> All loss and expense, including reasonable attorney fees, . . . incurred by Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned;

---

[1] Ms. Seidler's Affidavit is attached as Exhibit A to West Bend's Motion for Summary Judgment, along with the exhibits Ms. Seidler reviewed for purposes of completing her Affidavit. (Doc. No. 85-1.) A copy of the Bond is attached as Exhibit A-1 to Ms. Seidler's Affidavit. (Doc. No. 85-2 ("Seidler Aff.") at PageID# 774–75.)

[2] A copy of the Indemnity Agreement is attached as Exhibit A-3 to Ms. Seidler's Affidavit. (Doc. No. 85-4.)

> An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. . . . .

(Doc. No. 85-4 at PageID# 805–06.) The Indemnity Agreement was included in a Rapid Bond Account Application ("Application") which listed Osmic, Inc. as the Contractor and Hugh Osmic as the exclusive indemnitor and owner of Osmic, Inc. (*Id.* at PageID# 804.) Two purported signatures of Hugh Osmic, one on behalf of Osmic, Inc. and another on behalf of himself as an indemnitor, appear on the last page of the Indemnity Agreement. (*Id.* at PageID# 806.) Jamie Yert, an insurance broker, testified during his deposition that he witnessed Hugh Osmic provide these signatures.[3] (Doc. No. 84 at 20:14–19.)

In an Affidavit attached his Response to West Bend's Motion for Summary Judgment ("Response Affidavit"),[4] Hugh Osmic avers that his purported signature on the Indemnity Agreement is "false" and "was never signed by Hugh Osmic." (Doc. No. 97-2 ("Osmic's Response Aff.") at PageID# 1088.)

On April 25, 2018, Osmic, Inc. submitted a bid for a General Contract for certain construction work on the Project. (Doc. No. 85-3 at PageID# 784–88.) On May 15, 2018, MetroHealth awarded Osmic, Inc. the MetroHealth Contract based on Osmic, Inc.'s bid. (*Id.* at PageID# 796, 800.) The MetroHealth Contract provided that Osmic, Inc. was to substantially complete its work on the Project by August 17, 2018, and MetroHealth was to pay Osmic, Inc. the Contract Sum of $130,636.00 for

---

[3] On December 1, 2023, West Bend submitted a copy of the transcript of Hugh Osmic's deposition of James Yert. (Doc. No. 84.)

[4] Attached to Hugh Osmic's Response to West Bend's Motion for Summary Judgment are two affidavits by Hugh Osmic, one of which is his "Response Affidavit" in which Hugh Osmic avers that he did not sign the Indemnity Agreement. (Doc. No. 97-2 at PageID# 1088.) The other affidavit presents purported correspondence with Google concerning the email address yert-insurance@gmail.com, from which the Application (to include the Indemnity Agreement) appears to have been sent to Jamie Yert, who then forwarded it to West Bend. (Doc. No. 97-2 at PageID# 1088, 1093.)

3

its services. (*Id.* at PageID# 798.) MetroHealth subsequently paid Osmic, Inc. a total of $116,901.92 of the total MetroHealth Contract Sum. (Seidler Aff. at ¶ 5.)

According to Ms. Seidler, Osmic, Inc. nevertheless "failed to fully and adequately perform the work required of it under the MetroHealth Contract." (*Id.* at ¶ 6.) Ms. Seidler avers that West Bend received claims against the Bond by MetroHealth and Corporate Floors, a third-party labor and material supplier. (*Id.* at ¶¶ 7, 11.) After West Bend received MetroHealth's claim, West Bend "repeatedly asked Osmic, Inc. for over two [] years to substantiate any dispute of this claim" but Osmic, Inc. "failed to do so." (*Id.* at ¶ 8; Doc. No. 1-4 at PageID# 44.) West Bend thereafter retained J.S. Held, a third-party consultant, to investigate and verify MetroHealth's claims that Osmic, Inc.'s work was defective and analyze Corporate Floors' records as well as to complete and correct Osmic, Inc.'s work. (Seidler Aff. at ¶¶ 9, 10.) According to Ms. Seidler, West Bend thereafter resolved MetroHealth and Corporate Floors' claims against the Bond. (*Id.* at ¶¶ 10, 11; Doc. No. 42-1 at ¶¶ 11, 12.)

On February 8, 2021, West Bend sent Hugh Osmic and Defendant Kimberly Osmic a demand for indemnity and reimbursement for its losses, costs, and expenses incurred in connection with the Project and the settlement of claims in relation thereto. (Doc. No. 1-4; Seidler Aff. at ¶ 12.) According to Attorney Seidler, Hugh Osmic failed to indemnify and reimburse West Bend. (Seidler Aff. at ¶ 12.)

### II. Procedural History

On March 12, 2021, West Bend filed a Complaint in this Court against Osmic, Inc., Hugh Osmic, and Kimberly Osmic. (Doc. No. 1.) In its Complaint, West Bend alleges claims for Breach

of Contract/Contractual Indemnification (Count I), Common Law Indemnification (Count II), Declaratory Judgment (Count III), and Conversion (Count IV).  (*Id.*)

On November 10, 2021, West Bend filed a Motion for Default Judgment against Osmic, Inc. (Doc. No. 35.)  On February 16, 2022, the Court issued an opinion in which it concluded that West Bend established that it had paid $94,750.00 in bond claim payments to MetroHealth and Corporate Floors as well as $11,229.85 in payments for consultant fees and related costs to J.S. Held, granted West Bend's Motion for Default Judgment, and entered default judgment against Osmic, Inc.  (Doc. No. 42; Doc. No. 45 at PageID# 454–56.)

On October 16, 2023, West Bend filed a Motion to Dismiss Kimberly Osmic.  (Doc. No. 82.)  The Court granted West Bend's Motion to Dismiss and dismissed Kimberly Osmic from this case on November 27, 2023, leaving Hugh Osmic as the sole Defendant.  (Non-Document Order, Nov. 27, 2023.)

With leave of Court, West Bend filed the instant Motion for Summary Judgment against Hugh Osmic only on December 15, 2023.  (Non-Document Order, Nov. 27, 2023; Doc. No. 85.)  Also with leave of Court,[5] Hugh Osmic filed a Response to West Bend's Motion for Summary Judgment.  (Doc. No. 97.)  On April 26, 2024, West Bend filed a Reply in support of its Motion for Summary Judgment.

---

[5] On March 12, 2024, Hugh Osmic filed a Notice to the Court, representing that he was never served a copy of West Bend's Motion for Summary Judgment. (Doc. No. 91.)  That same day, the Court ordered West Bend to provide it with a "copy of the email it purportedly sent to Hugh Osmic containing a copy of West Bend's Motion for Summary Judgment" and file an affidavit or other sworn statement in support thereof. (Non-Document Order, Mar. 12, 2024.)  On March 13, 2024, West Bend filed a Sworn Statement and Response to the Court's March 12, 2024 Order, in which West Bend's Counsel "aver[red] that he [did] not have a record of the email West Bend purportedly sent to serve Defendant Hugh Osmic a copy of West Bend's pending Motion for Summary Judgment." (Doc. No. 92.)  On March  14, 2024, the Court granted Hugh Osmic 30 days to file a response to West Bend's Motion for Summary Judgment and 14 days thereafter for West Bend to file a reply.  (Non-Document Order, Mar. 14, 2024.)  Hugh Osmic filed a Motion for Extension of Time to respond to West Bend's Motion for Summary Judgment on March 15, 2024, which the Court granted in part on March 19, 2024, providing Hugh Osmic until April 20, 2024, to file his Response.  (Doc. Nos. 93, 94.)

(Doc. No. 98.)

On April 29, 2024, Hugh Osmic filed a Supplemental Reply Brief (Doc. No. 99), and on April 30, 2024, Hugh Osmic filed a Verified Affidavit (Doc. No. 100). On May 3, 2024, West Bend filed a Motion to Strike Hugh Osmic's Supplemental Reply Brief and Verified Affidavit. (Doc. No. 101.) On May 20, 2024, Hugh Osmic filed a Verified Objection to West Bend's Motion to Strike. (Doc. No. 102.) West Bend did not file a Reply in support of its Motion to Strike.

Accordingly, West Bend's Motion for Summary Judgment and Motion to Strike are ripe for a decision.

**III.     Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material . . . only if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506,

508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may [also] meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

**IV. Analysis**

    **A. Motion to Strike**

In Hugh Osmic's Supplemental Reply Brief and Verified Affidavit, Hugh Osmic includes over a dozen pages of claims for relief, legal arguments, and additional factual allegations. (Doc. Nos. 99, 100.) West Bend moves to strike Hugh Osmic's Supplemental Reply Brief and Verified Affidavit on the basis that they are unauthorized sur-replies filed in bad faith. (Doc. No. 101.) In his Verified Objection, Hugh Osmic contends that the Court should construe his Verified Affidavit (Doc. No. 100) "as an affidavit" and not as a sur-reply, and alternatively requests "leave to file the same." (Doc. No. 102 at PageID# 1137–38.)

As an initial matter, Hugh Osmic does not dispute that his Supplemental Reply Brief (Doc. No. 99) is an unauthorized sur-reply or otherwise contest West Bend's Motion to Strike as to that

7

filing. Therefore, the Court **GRANTS** West Bend's Motion to Strike as unopposed as to Hugh Osmic's Supplemental Reply Brief. (Doc. No. 101.)

For the following reasons, the Court also declines to consider Hugh Osmic's Verified Affidavit. (Doc. No. 100.) Local Rule 7.1 contemplates that, when a party files a motion, the non-moving party must file an opposition, and the moving party may then file a reply. *See* Local Rules 7.1(c)–(e). No additional briefing is authorized under this Court's Local Rules. "[C]ourts agree that neither local rules . . . nor the Federal Rules of Civil Procedure authorize a non-moving party to file a sur-reply, and that to file a sur-reply the party must obtain leave of the court." *Eberhard v. Chicago Title Ins. Co.*, 2014 WL 12756822, at *2 (N.D. Ohio Jan. 8, 2014) (collecting cases). "[S]uch filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby County*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. TVA*, 339 F.3d 454, 481 (6th Cir. 2003)) (alteration in original); *accord Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010) ("This Court grants leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply."). On the other hand, when a reply does not include new arguments or evidence, a sur-reply is "an impermissible attempt to have the last word." *Attractive Surgical, LLC v. Cleveland Clinic Found.*, 2019 WL 11075734, at *4 (N.D. Ohio Oct. 31, 2019).

Here, although Hugh Osmic requests leave to file his Verified Affidavit as a sur-reply, he fails to identify any new arguments, issues, or assertions that he believes West Bend raised for the first time in its Reply. *Key*, 551 F. App'x at 265 (quoting *Seay*, 339 F.3d at 481). West Bend's Reply addresses only the arguments that Hugh Osmic presents in his Response to West Bend's Motion for

Summary Judgment and does not provide additional argumentation or evidence. (*See* Doc. No. 98.)[6] The Court cannot and does not consider Hugh Osmic's Verified Affidavit (Doc. No. 100) in evaluating West Bend's Motion for Summary Judgment.

While the Court is mindful of Hugh Osmic's *pro se* status, the Court has repeatedly reminded him of his obligation to understand and follow this Court's rules, including the requirement that he must seek leave to file a sur-reply. (*See* Doc. No. 57 at ¶ 8.) Because Hugh Osmic failed to request leave to file a sur-reply prior to filing his Verified Affidavit (Doc. No. 100) or sufficiently explain why leave to do so should be granted, the Court **GRANTS** West Bend's Motion to Strike as to Hugh Osmic's Verified Affidavit. *See* Fed. R. Civ. P. 12(f); *Petrovic v. United States*, 2018 WL 4959031 at *3 (6th Cir. June 8, 2018) ("We affirm the district court's decision to strike his sur-reply because the district court did not abuse its discretion, considering the relevant local rule does not allow sur-replies and Petrovic did not seek leave to file one.").

### B. Motion for Summary Judgment

Before the Court examines the merits of West Bend's Motion for Summary Judgment, the Court notes the following. West Bend indicates that it seeks summary judgment "on all claims in its favor and against Defendant Hugh Osmic." (Doc. No. 85 at PageID# 768.) However, West Bend's Motion for Summary Judgment refers to the Indemnity Agreement in detail and largely discusses only Hugh Osmic's alleged breach of contract and West Bend's alleged entitlement to

---

[6] Further, Hugh Osmic's contention that his Verified Affidavit should be considered an affidavit as opposed to an unauthorized sur-reply is meritless. Hugh Osmic's Verified Affidavit includes several pages of legal argument and claims for relief, such as a contention that this Court lacks jurisdiction and that counsel for West Bend committed fraud. (Doc. No. 100.) These allegations clearly fall beyond the scope of an affidavit, and Hugh Osmic himself acknowledges this. (Doc. No. 102 at PageID# 1138 ("Affidavits are sworn statements used to present *evidence* in written form . . . .) (emphasis added).

9

indemnification from Hugh Osmic under the Indemnity Agreement.  (*See generally id.*)  The Court will therefore construe West Bend's Motion for Summary Judgment as seeking judgment in its favor on its Breach of Contract/Contractual Indemnification claim (Count I) only.  *See Kazay v. Face & Body, LLC*, 2023 WL 3258427, at *2 (M.D. Tenn. May 4, 2023), *amended and superseded on other grounds*, 2023 WL 3331800 (M.D. Tenn. May 8, 2023).

In Count I, West Bend alleges a claim for breach of contract and contractual indemnification based on Hugh Osmic's breach of the Indemnity Agreement when he failed to indemnify West Bend from the losses it incurred in connection with its issuance of the Bond.  (Doc. No. 1 at ¶¶ 20–27.)

In its Motion for Summary Judgment, West Bend argues that it "had a valid and binding Indemnity Agreement" with Hugh Osmic, in reliance upon which West Bend issued the Bond.  (Doc. No. 85 at PageID# 766.)  West Bend contends that although the Indemnity Agreement required Hugh Osmic to indemnify it for losses and expenses it incurred in connection with the Bond, when it incurred losses to resolve claims made against the Bond, Hugh Osmic refused to indemnify and reimburse West Bend, thereby breaching the Indemnity Agreement.  (*Id.*)

In response, Hugh Osmic contends that the Application and Indemnity Agreement are "fictitious" and that he "never signed" the Bond, Application, or Indemnity Agreement.  (Doc. No. 97 at PageID# 1080–81.)  In support of this contention, Hugh Osmic presents his Response Affidavit in which he avers that his purported signature on the Indemnity Agreement is false and "was never signed by Hugh Osmic."  (Osmic's Response Aff. at PageID# 1088.)  Hugh Osmic further argues that West Bend has failed to prove the "proper recording of an indemnity agreement or bonds."  (Doc. No. 97 at PageID# 1081.)

In its Reply, West Bend contends that Hugh Osmic's claim that his signature on the Indemnity Agreement is a forgery is "simply a generalized and conclusory allegation" uncorroborated by any other evidence. (Doc. No. 98 at PageID# 1109.) West Bend further replies that Hugh Osmic has failed to contradict James Yert's testimony that he witnessed Hugh Osmic sign the Indemnity Agreement, and that Hugh Osmic's "self-serving" conclusory affidavit is insufficient to create a genuine issue of material fact. (*Id.* at PageID# 1109–10.)[7]

In this case, West Bend has introduced, and Hugh Osmic has not contested, evidence demonstrating that it made payments to Corporate Floors, MetroHealth, and J.S. Held to settle claims made against the Bond in connection with the Project. Hugh Osmic, in pertinent part, only contests whether he signed the Indemnity Agreement, and does not dispute that, if the Indemnity Agreement were valid and enforceable, he would be obligated to indemnify West Bend for the losses it incurred in connection with Osmic, Inc.'s work on the Project. (Doc. No. 97; Osmic's Response Aff. at PageID# 1088.) Therefore, the only issue for the Court to resolve is whether there exists a genuine dispute of material fact as to whether the Indemnity Agreement is a valid and enforceable contract.

---

[7] Hugh Osmic also attached to his Response purported correspondence with Google, which Hugh Osmic contends shows that the Application (including the Indemnity Agreement) was never actually sent to West Bend via Jamie Yert. (Doc. No. 97-2.) West Bend contends that this correspondence is unauthenticated hearsay. (Doc. No 98 at PageID# 1110.) Because, as the Court discusses below, Hugh Osmic's Response Affidavit alone creates a genuine dispute of material fact concerning the Indemnity Agreement's validity and enforceability, the Court need not address this alternative argument.

Under Ohio law,[8] the "[e]ssential elements of a contract[9] include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Bonds v. Univ. of Cincinnati Med. Ctr.*, 2019 U.S. App. LEXIS 3827 at *9 (6th Cir. Feb. 6, 2019) (quoting *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)). It is basic contract law that to have an enforceable contract, there must be a meeting of the minds of the parties to the contract. *Alligood v. Procter & Gamble Co.*, 594 N.E.2d 668, 669 (Ohio App. 1st Dist. 1991). Unless the parties agree as to all essential terms, no contract exists. *Kostelnik. v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). "The existence of an enforceable contract is a prerequisite to a claim for breach of contract." *Ireton v. JTD Realty Invs., LLC*, 2011-Ohio-670, ¶ 38 (Ohio App. 12th Dist. 2011); *Phila. Indem. Ins. Co. v. Fox*, 2019 WL 2437442, at *2 (S.D. Ohio June 10, 2019) (citing *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926 (Ohio App. 4th Dist. 2007)). For the following reasons, the Court concludes that a genuine dispute of material fact exists as to whether the Indemnity Agreement is a valid and enforceable contract.

Hugh Osmic has submitted affidavit evidence that he did not sign the Indemnity Agreement and that "the purported signature is false." (Osmic's Response Aff. at PageID# 1088.) In the Sixth

---

[8] In a diversity case, federal courts apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Here, West Bend requests that the Court apply Ohio law to its contractual indemnification claim, and Hugh Osmic does not dispute that Ohio law applies. (Doc. No. 85 at PageID#s 765–67.) Therefore, the Court applies Ohio law. A federal court exercising diversity jurisdiction must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks omitted). If the Ohio Supreme Court has not addressed the issue presented, the court "must anticipate how [Ohio's] highest court would rule and may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination." *Kepley*, 715 F.3d at 972 (internal quotation marks omitted).

[9] In Ohio, "[c]ourts interpret indemnity agreements the same way they interpret contracts." *Papatheodorou v. Clark*, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011).

Circuit, an affidavit, while "arguably self-serving, is not 'no evidence.'" *Grassi v. Grassi*, 2021 WL 3355475, at *6 (6th Cir. Aug. 3, 2021) (quoting *Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir. 2008)). Under *Grassi*, "specific and repeated sworn . . . testimony that the signatures were forged . . . uncontroverted by prior or subsequent statements or actions" is "sufficient to create a question of fact as to the authenticity of the [a]greements." *Id.* West Bend has not provided any evidence that Hugh Osmic admitted to or conceded that the signature on the Indemnity Agreement is his own. Therefore, Hugh Osmic's "self-serving" Response Affidavit, on its own, establishes a genuine dispute of fact with respect to whether he signed the Indemnity Agreement. *Id.* at *6–7; *see also JB&B Cap., LLC v. Medrite, LLC*, 2023 WL 5411854, at *2 (E.D. Tenn. Aug. 22, 2023) (applying *Grassi* to conclude that defendant's testimony that she did not sign relevant agreement created a genuine dispute of fact). This conclusion holds "even though the testimony [comes] from [Hugh Osmic] himself."[10] *Grassi*, 2021 WL 3355475, at *6.

West Bend further argues that the testimony of Jamie Yert, who testified that he witnessed Hugh Osmic sign the Indemnity Agreement, is not "contradicted." (Doc. No. 98 at PageID# 1109; Doc. No. 84 at Tr. 20.) As the Sixth Circuit observed in *Grassi*, "a reasonable [fact-finder] might also find [Hugh Osmic's] account of forgery unbelievable." *Grassi*, 2021 WL 3355475, at *7. However, it is the province of the trier of fact at trial, and not for the Court at summary judgment, to weigh the evidence and assess the credibility of affiants. *Id.*; *see also Howard Indus. v. BADW Grp.*,

---

[10] West Bend cites several cases for its contention that Hugh Osmic's "self-serving affidavit" cannot, without "corroborating evidence," invalidate his purported signature on the Indemnity Agreement. (Doc. No. 98 at PageID# 1110–12 (citing *Bd. of Trs. of the Plumbers, Pipefitters & Equip. Serv. v. Humbert*, 2016 WL 705243 (S.D. Ohio Feb. 23, 2016), *U.S. Bank Nat'l Ass'n v. Bobo*, 2014-Ohio-4975 (Ohio App. 4th Dist. Nov. 5, 2014), and *Fifth Third Bank v. Jones-Williams*, 2005-Ohio-4070 (Ohio App. 10th Dist. Aug. 9, 2005)).) However, not only do these cases predate *Grassi*, but this Court is bound by Sixth Circuit precedent. West Bend does not proffer any authority indicating that Hugh Osmic can never rely on his own affidavit to prove forgery. *See JB&B Cap.*, 2023 WL 5411854, at *3.

13

*LLC*, 2021 WL 2328477, at *4 (6th Cir. Mar. 2, 2021).  Therefore, the Court cannot, at this stage, weigh the credibility of West Bend and Hugh Osmic's evidence.  Accordingly, the Court concludes that a genuine dispute of material fact exists with respect to whether Hugh Osmic signed and is therefore bound to the terms of the Indemnity Agreement.

**V.     Conclusion**

For the reasons set forth above, West Bend's Motion to Strike (Doc. No. 101) is **GRANTED**, and West Bend's Motion for Summary Judgment (Doc. No. 85) is **DENIED**.

**IT IS SO ORDERED.**

        *s/Pamela A. Barker*
        PAMELA A. BARKER
Date: May 30, 2024        U. S. DISTRICT JUDGE