## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **West Bend Mutual Ins. Co.,** | **Case No. 1:21CV00593** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **Hugh Osmic, et al.,** | |
| | **FINDINGS OF FACT & CONCLUSIONS** |
| **Defendants.** | **OF LAW** |

In this breach of contract action, Plaintiff West Bend Mutual Insurance Company ("Plaintiff" or "West Bend") claims that Defendant Hugh Osmic ("Defendant" or "Mr. Osmic") failed to indemnify West Bend against losses and expenses that it incurred in connection with certain construction surety bonds that it issued to Mr. Osmic and his company, Osmic, Inc.  The Court conducted a bench trial regarding West Bend's claims on February 13, 2025.  West Bend presented the testimony of two witnesses and introduced numerous exhibits.  Mr. Osmic, who is proceeding *pro se*, failed to appear at the bench trial.

Pursuant to Fed. R. Civ. P. 52(a), the Court now issues the following findings of fact and conclusions of law based on a careful consideration of the credibility of the witnesses, the trial record, and the parties' written and oral arguments.  For the reasons articulated in more detail below, the Court concludes that West Bend is entitled to judgment in its favor on its breach of contract and declaratory judgment claims in Counts I and II of the Complaint, as set forth herein.

## I.    Relevant Procedural History

This matter has been subject to numerous delays, many of which have been caused by Mr. Osmic.  West Bend filed its Complaint in this Court nearly four years ago, on March 12, 2021.  (Doc.

No. 1.)  Therein, West Bend alleged claims against Defendants Osmic, Inc., Hugh Osmic, and Kimberly Osmic for Breach of Contract/Contractual Indemnification (Count I), Common Law Indemnification (Count II), Declaratory Judgment (Count III), and Conversion (Count IV).  (*Id.*)

After several unsuccessful attempts, West Bend perfected service on Mr. Osmic in June 2021. (Doc. No. 12.)  When he failed to timely Answer, West Bend applied for (and the Court entered) default against Mr. Osmic on August 6, 2021.  (Doc. Nos. 18, 19.)  Mr. Osmic, proceeding *pro se,* promptly filed an "Objection," which the Court construed as a Motion to Set Aside Entry of Default and granted on October 7, 2021.[1]  (Doc. Nos. 20, 27.)

On November 9, 2021, Mr. Osmic filed a *pro se* Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Motion for Judgment on the Pleadings, which West Bend opposed.  (Doc. Nos. 32, 33, 37.)  The Court issued a Memorandum Opinion & Order denying both Motions.  (Doc. No. 47.) Mr. Osmic filed an Answer on July 5, 2022.  (Doc. No. 51.)  He has proceeded *pro se* throughout the instant proceedings.

On July 20, 2022, the Court conducted a Case Management Conference, during which it set various case management deadlines.  (Doc. No. 57.)  In December 2022, the Court granted the parties' oral request to extend the discovery and dispositive motions deadlines by sixty (60) days.  *See* Non-Doc Order dated Dec. 2, 2022.

---

[1] West Bend also applied for entry of default against Defendant Osmic, Inc. The Court entered default against Osmic, Inc. and declined to set aside the entry of default for the reasons set forth in this Court's October 7, 2021 Order.  (Doc. No. 27.)  On November 10, 2021, West Bend filed a Motion for Default Judgment against Osmic, Inc.  (Doc. No. 35.) On February 16, 2022, the Court issued an opinion in which it concluded that West Bend had established $94,750.00 in bond claim payments to MetroHealth and Corporate Floors as well as $11,229.85 in payments for consultant fees and related costs to J.S. Held and $33,046.79 in attorney's fees and costs, granted West Bend's Motion for Default Judgment, and entered default judgment against Osmic, Inc.  (Doc. No. 45 at PageID#s 454–56.)  West Bend later filed a Motion to Dismiss Kimberly Osmic, which this Court granted in November 2023.  (Doc. No. 82; Non-Doc Order dated Nov. 27, 2023.)

On January 9, 2023, Mr. Osmic notified the Court that, on December 1, 2022, he filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Ohio.  (Doc. No. 64.)  *See also In re Osmic*, Case No. 22-13664 (N.D. Ohio Bkptcy. Ct.)  Pursuant to 11 U.S.C. § 362, Mr. Osmic's filing mandated the imposition of an automatic stay of the proceedings against Mr. Osmic in this Court. Thus, the Court issued an Order staying further proceedings against Mr. Osmic "subject to reopening upon written motion by Plaintiff or other parties in interest, which warrants relief from the automatic stay imposed by § 362 or by injunction imposed under 11 U.S.C. § 524 or which notifies the Court that the bankruptcy case is closed, dismissed, or discharged."  (Doc. No. 65.)

On February 16, 2023, the Bankruptcy Court issued an Order granting Mr. Osmic's Motion to Voluntarily Dismiss his Chapter 13 Bankruptcy Petition.  *See In re Hugh Osmic*, Case No. 22-13664 (Bankr. Ct. N.D. Ohio).  West Bend thereafter filed a Motion to Resume the instant proceedings against Mr. Osmic, which this Court granted on February 27, 2023.  (Doc. Nos. 69, 70.) Mr. Osmic then moved to extend the time for discovery for a period of three months.  (Doc. No. 74.) West Bend opposed the Motion.  (Doc. No. 76.)  The Court conducted a status conference on March 15, 2023, during which it extended the fact discovery deadline by thirty (30) days, i.e., until April 14, 2023.[2]  *See* Non-Doc. Order dated March 15, 2023.

On January 26, 2024, Mr. Osmic filed a Motion for Leave to File an Amended Answer and Counterclaim.  (Doc. No. 87.)  On February 1, 2024, the Court issued a Memorandum Opinion and

---

[2] In a Minute Order issued after the March 15, 2023 status conference, the Court noted as follows:  "Hugh Osmic confirmed that he had filed his petition for bankruptcy *pro se* on December 1, 2022 … or the day before the status conference held in this matter on December 2, 2022. Yet, during that status conference, Hugh Osmic … orally moved the Court for a 60-day extension of the case management deadlines, but Hugh Osmic failed to mention the filing of his bankruptcy petition during that conference." *See* Non-Doc Order dated March 15, 2023.

3

Order denying Mr. Osmic's Motion.  (Doc. No. 88.)  Mr. Osmic then filed a Notice of Appeal to the Sixth Circuit from the Court's February 1, 2024 Order.  (Doc. No. 89.)  This Court later issued an Order clarifying that, despite Mr. Osmic's appeal, this Court retained jurisdiction over the case because the February 1, 2024 Order "is clearly, plainly, and patently non-appealable."  (Doc. No. 94.)  Shortly thereafter, on March 27, 2024, the Sixth Circuit dismissed Mr. Osmic's appeal for lack of jurisdiction.  (Doc. No. 96.)

Meanwhile, West Bend filed a Motion for Summary Judgment.  (Doc. No. 85.)  Mr. Osmic filed a Brief in Opposition on April 22, 2024.[3]  (Doc. No. 97.)  Therein, Mr. Osmic argued, for the first time, that he "never signed" the Rapid Bond Application and General Agreement of Indemnity that form the basis of West Bend's claims.  (*Id*.)  In support of this contention,  Mr. Osmic presented an Affidavit in which he averred that his purported signature on the Indemnity Agreement is false and that the Agreement "was never signed by Hugh Osmic."  (Doc. No. 97-2 at PageID# 1088.)  In its Reply Brief, West Bend contended that (1) Mr. Osmic had failed to contradict the deposition testimony of James Yert that Mr. Yert witnessed Mr. Osmic sign the Indemnity Agreement, and (2) Mr. Osmic's "self-serving" conclusory affidavit was insufficient to create a genuine issue of material fact.  (Doc. No. 98 at PageID# 1109–10.)

---

[3] On March 12, 2024, Mr. Osmic filed a Notice to the Court, representing that he was never served a copy of West Bend's Motion for Summary Judgment. (Doc. No. 91.) That same day, the Court ordered West Bend to provide it with a "copy of the email it purportedly sent to Hugh Osmic containing a copy of West Bend's Motion for Summary Judgment" and file an affidavit or other sworn statement in support thereof. (Non-Document Order, Mar. 12, 2024.) On March 13, 2024, West Bend filed a Sworn Statement and Response to the Court's March 12, 2024 Order, in which West Bend's Counsel "aver[red] that he [did] not have a record of the email West Bend purportedly sent to serve Defendant Hugh Osmic a copy of West Bend's pending Motion for Summary Judgment." (Doc. No. 92.) On March 14, 2024, the Court granted Mr. Osmic 30 days to file a response to West Bend's Motion for Summary Judgment and 14 days thereafter for West Bend to file a reply. (Non-Document Order, Mar. 14, 2024.) Mr. Osmic filed a Motion for Extension of Time to respond to West Bend's Motion for Summary Judgment on March 15, 2024, which the Court granted in part on March 19, 2024, providing Mr. Osmic until April 20, 2024, to file his Response. (Doc. Nos. 93, 94.)

On May 30, 2024, this Court issued a Memorandum Opinion & Order in which it concluded that Mr. Osmic's Affidavit was sufficient to create a genuine dispute of fact with respect to whether he signed the Indemnity Agreement at issue herein.  (Doc. No. 103.)  The Court, therefore, denied West Bend's Motion for Summary Judgment and set the matter for bench trial on September 23, 2024.  (Doc. Nos. 103, 104.)

Mr. Osmic responded by filing a flurry of meritless motions.  On August 6, 2024, Mr. Osmic filed a "Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction and for Right to Jury Trial."  (Doc. No. 105.)  The Court issued a Memorandum Opinion & Order denying the Motion on August 7, 2024.  (Doc. No. 106.)  On August 9, 2024, Mr. Osmic filed a "Demand for Jury Trial." (Doc. No. 107.)  The Court denied Mr. Osmic's "Demand" later that same day.  *See* Non-Doc Order dated Aug. 9, 2024.  On August 28, 2024, Mr. Osmic filed yet another "Motion to Dismiss and Right to Jury Demand," which the Court denied.  (Doc. Nos. 108, 111.)

On August 29, 2024, the Court conducted a Final Pretrial Conference.  (Doc. No. 109-1.) Counsel for West Bend and Mr. Osmic participated.  (*Id*.)  During the conference, the Court discussed, at some length, the various filing deadlines and requirements set forth in the Court's Civil Trial Order (Doc. No. 104).  Among other things, the Court reminded the parties that their respective Trial Briefs must be filed by no later than September 13, 2024.  (*Id*.)

On September 6, 2024, the Court issued a Memorandum Opinion & Order denying Mr. Osmic's August 28, 2024 Motion to Dismiss and Right to Jury Demand. (Doc. No. 111.)  On September 12, 2024 (the day before the parties' Trial Briefs were due), Mr. Osmic filed a Notice of Appeal to the Sixth Circuit from this Court's September 6, 2024 Opinion & Order.  (Doc. No. 113.) This Court issued an Order providing (in relevant part) as follows:

5

> In order to avoid any doubt, the Court hereby advises and orders that, notwithstanding Defendant Osmic's Notice of Appeal, the parties are required to comply with all filing deadlines and other requirements set forth in this Court's Civil Trial Order (Doc. No. 104 ), including the filing of Trials Briefs by no later than today, September 13, 2024. *See Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981) ("It is firmly established that denial of a jury demand is a nonappealable interlocutory order."); *Greer v. Strange Honey Farm, LLC,* 2024 WL 4100249 at * 3 (6th Cir. Sept. 6, 2024) ("Examples of [clearly nonappealable] orders include. a denial of a jury demand"); *Michigan Bell Telephone Co. v. Climax Telephone Co.*, 202 F.3d 862, 866 (6th Cir. 2000) ("Ordinarily, appellate jurisdiction is lacking to hear an appeal from an order denying a Rule 12(b)(6) motion to dismiss since such an order is interlocutory in nature.").

*See* Non-Doc Order dated September 13, 2024.

West Bend timely filed its Trial Brief on September 13, 2024.[4]  (Doc. No. 114.)  The docket reflects that Mr. Osmic did not file his Trial Brief.  Rather, on September 16, 2024, Mr. Osmic emailed the Court to advise that he had filed for bankruptcy on Friday, September 13, 2024 and that he would be "filing a Notice in the coming days."  The Court ordered Mr. Osmic to file a Notice of Bankruptcy on the docket by no later than September 17, 2024.  *See* Non-Doc Order dated Sept. 16, 2024.

On September 17, 2024, Mr. Osmic filed a Notice that, on September 13, 2024, he filed his second voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Ohio. (Doc. No. 115.) *See also In re Osmic*, Case No. 24-13699 (N.D. Ohio Bkptcy. Ct.).  Mr. Osmic's filing once again mandated the imposition of an automatic stay of the proceedings against him in this Court.  The Court issued an

---

[4] Therein, West Bend indicated, in relevant part, that Mr. Osmic had failed to meet and confer regarding Stipulations, as required by this Court's Civil Trial Order.  (Doc. No. 114 at PageID# 1241.)  Specifically, West Bend stated as follows: "At the Final Pre-Trial on August 24, 2024, Osmic indicated that he was available to discuss stipulations on September 4, 2024 at 10:00am. Plaintiff's counsel sent a meeting invite for that date and time, along with proposed stipulations. Osmic cancelled that meeting via email at 9:32am on September 4, 2024. Plaintiff's counsel suggested new meeting dates and times, but Osmic did not respond." (*Id.*)

Order to that effect on September 18, 2024. (Doc. No. 116.) In light of Mr. Osmic's bankruptcy filing and the automatic stay, the Court cancelled the bench trial, which was set to commence on September 23, 2024. (*Id.*)

On November 12, 2024, the Sixth Circuit dismissed Mr. Osmic's appeal from this Court's September 6, 2024 Order for lack of jurisdiction. (Doc. No. 117.)

Shortly thereafter, on November 22, 2024, West Bend filed a Motion to Lift the Stay, noting that Mr. Osmic's bankruptcy case was dismissed by the Bankruptcy Court on November 7, 2024 for Mr. Osmic's failure to file a plan within the time required by Bankruptcy Rule 3015 and his failure to file schedules and statements as required by 11 U.S.C. § 521(1) within the time required by Bankruptcy Rule 1007(c). (Doc. No. 118 at PageID# 1256.) This Court granted West Bend's Motion and lifted the stay on November 22, 2024. (Non-Doc Order dated Nov. 22, 2024).

The Court then conducted a status conference on December 3, 2024. (Doc. No. 119.) During the conference, the Court expressly advised counsel for West Bend and Mr. Osmic that they should arrive in Courtroom 16A at 8:30 a.m. on the first day of trial. (*Id.*) The Court then advised the parties of the following deadlines: (1) Trial Briefs must be filed by no later than February 3, 2025;[5] (2) the parties must confer regarding Stipulations of Fact and any such Stipulations must be filed by no later than February 3, 2025; (3) Objections to Witnesses and/or Exhibits must be filed by no later than February 6, 2025; (4) Objections to Deposition Testimony must be filed by no later than February 6, 2025. (*Id.*) In addition, the Court noted (in relevant part) as follows:

> Mr. Osmic did interpose an objection to having the trial date set for February 13, 2025, advising the Court and counsel for Plaintiff that he is experiencing health issues for which he is being treated and that he would prefer to have the trial date set in April of

---

[5] The Court noted that counsel for West Bend already filed its Trial Brief on September 13, 2024, but stated West Bend could file an updated Trial Brief by February 3, 2025.

2025. **The Court advised Mr. Osmic that this case will be four years old in March and therefore, absent a motion to continue the February 13, 2025 trial date that is supported by a medical report from Mr. Osmic's treating doctor indicating that Mr. Osmic is medically unable to proceed with the trial on February 13, 2025, any such motion to continue will be denied**. The Court also advised Mr. Osmic that if he files any further notices of appeal, any such notice will not divest this Court of jurisdiction to proceed with the trial as scheduled, since the Court of Appeals has made it clear in its Orders entered on March 27, 2024 and November 12, 2024 dismissing Mr. Osmic's appeals of non-final orders of this Court, that it lacks jurisdiction over non-final orders.

(*Id.*)(emphasis added).[6]

On February 3, 2025, West Bend timely filed its updated Trial Brief.  (Doc. No. 120.)  Therein, West Bend noted (among other things) that Mr. Osmic had failed to respond to any attempts by counsel for West Bend to meet to discuss Stipulations, as required by this Court's Orders.  (*Id.* at PageID# 1265.)  Specifically, counsel for West Bend (Attorney Marc Sanchez) indicated that he sent emails to Mr. Osmic on December 27, 2024 and January 31, 2025 requesting to discuss stipulations, but that Mr. Osmic failed to respond.  (*Id.*)

The docket reflects that Mr. Osmic did not file a Trial Brief.  Thus, on February 5, 2025, the Court issued an Order in which it stated (in relevant part) as follows:

The Court finds that Defendant Osmic has failed to comply with this Court's Civil Trial Order (Doc. No. 104) and December 3, 2024 Minute Order (Doc. No. 119) in numerous respects.   The Court hereby advises Defendant Osmic as follows.  **Defendant shall have until 5:00 p.m. EST on Monday, February 10, 2025 to file on the docket (1) a list of his proposed Witnesses along with a brief description of the subject matter of the testimony of each witness; and (2) an index of all of his proposed Exhibits containing a brief description of each Exhibit. <u>Defendant</u>**

---

[6] The Court also advised Mr. Osmic that: "[S]hould he file a third Notice of Bankruptcy in an attempt to stay the proceedings for a third time, then the Court will issue an order to show cause why he should not be held in contempt for doing so, given the fact that he has filed two Chapter 13 Bankruptcy cases – one on December 1, 2022, Case No. 22-13664-JPS, which was voluntarily dismissed by Mr. Osmic, and one on September 13, 2024, Case No. 24-13699-JPS which was dismissed by the bankruptcy court for Mr. Osmic's failure to file a plan within the time required by Bankruptcy Rule 3015 and his failure to file schedules and statements as required by 11 U.S.C. § 521(1) within the time required by Bankruptcy Rule 1007(c)."  (Doc. No. 119.)

**is hereby cautioned that, if he fails to comply with this Order, the Court will exclude any Witnesses that Defendant attempts to call, and any Exhibits that he seeks to introduce, at the bench trial**.

Finally, **the Court hereby advises and cautions Defendant that if he fails to appear at the bench trial on February 13, 2025, this Court will enter judgment in favor of Plaintiff**. Defendant is reminded that he should arrive in Courtroom 16A of the United States Courthouse for the Northern District of Ohio, 801 West Superior Avenue, Cleveland, promptly at 8:30 a.m. on February 13, 2025.

(Doc. No. 121) (emphasis in original). The Court sent the above Order to Mr. Osmic via both regular mail and email.

Mr. Osmic did not file his Witness List and/or index of proposed Exhibits on February 10, 2025. Rather, at approximately 3:09 p.m. on that date, Mr. Osmic sent an *ex parte* email to Chambers, in which he suggested that he would be filing a motion for continuance once his doctor provided a note "detailing [his] current condition." The Court responded to Mr. Osmic's email (and copied counsel for West Bend) as follows: "This is an *ex parte* communication which in no way changes the date of the bench trial set for February 13, 2025 … promptly at 8:30 a.m."

The docket reflects that Mr. Osmic did not, at any point prior to the bench trial, file a Motion for Continuance on the docket.[7]

_____

[7] Rather, on February 11, 2025, an unidentified individual emailed Chambers from Mr. Osmic's email address (and copied counsel for West Bend) to advise that Mr. Osmic's doctor had advised him to "check in to the emergency room immediately" for neurological testing. Attached to the email was a document purporting to be a treatment note from Mr. Osmic's chiropractor, David Copp, D.C. Notably, Dr Copp does not, at any point in this treatment note, indicate that Mr. Osmic is medically unable to proceed with the bench trial on February 13, 2025. The following day (i.e., February 12, 2025) Mr. Osmic filed a "Notice" in which he indicated that "future communication in regard to Hugh Osmic will be emailed to the court." (Doc. No. 122.) At 7:55 p.m. on February 12, 2025 (the night before bench trial was set to commence), Mr. Osmic sent an email to Chambers (with counsel for West Bend copied) indicating that he was "still in the hospital" where they were "testing for heart conditions" and waiting for follow up from a neurologist. Mr. Osmic indicated that he would "keep [the Court] posted" and "send charts once available." The Court has received no further communications from Mr. Osmic, either on the docket or via email.

On February 13, 2025, counsel for West Bend appeared for the bench trial at 8:30 a.m., along with West Bend's Senior Claims Attorney, Jenn Seidler. Mr. Osmic did not appear. The Court commenced the bench trial at 9:04 a.m. (Tr. 1.)

As set forth on the record, counsel for West Bend confirmed at the outset that it was seeking judgment solely with respect to its claims for Breach of Contract/Contractual Indemnification (Count I) and Declaratory Judgment (Count III). (Tr. 4.) In support of these claims, West Bend presented the testimony of Ms. Seidler and Mr. Yert. In addition, at the conclusion of its case, West Bend moved to introduce Plaintiff's Exhibits 1 through 20 into evidence. (Tr. 52.) The Court granted West Bend's request and admitted Plaintiff's Exhibits 1 through 20 into evidence. (*Id*.) At no point in time did Mr. Osmic appear for or participate in the bench trial.

## II. Findings of Fact

1. On April 4, 2017, Mr. Osmic executed a written Rapid Bond Account Application containing a Rapid Bond General Agreement of Indemnity ("Indemnity Agreement") in favor of West Bend. (Plaintiff's Exhibit 1; Doc. No. 85-4 at PageID#s 804-806.) The Indemnity Agreement contains Mr. Osmic's signature in both his personal capacity as "Indemnitor (Individual)" and as an authorized representative of Osmic, Inc. (Plaintiff's Exh. 1; Doc. No. 85-4 at PageID# 806.)

2. West Bend's Senior Claims Attorney, Jenn Seidler, explained that a Rapid Bond Account Application is the "first contact document where a principal is applying for bonds with West Bend Insurance." (Tr. 7.) Ms. Seidler further testified that the Indemnity Agreement is "a contract between the principal and the surety wherein the principal agrees to indemnify the surety in case the surety has to make a payment on the bond." (*Id*.)

10

3.     West Bend is identified in the Indemnity Agreement as the "Surety."  The Agreement

provides (in relevant part) as follows:

> INDEMNITY TO SURETY: The Undersigned agree to pay to Surety upon demand:
>
> 1.     All loss and expense, including reasonable attorney fees, and reasonable attorney's fees in connection with collection of said loss and expense from the Principal and or the Undersigned, incurred by Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned **
>
> **
>
> WITH RESPECT TO CLAIMS AGAINST SURETY:
>
> 1.     Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.
>
> 2.     Surety may incur such expenses, including reasonable attorney's fees, as deemed necessary or advisable in the investigation, defense, and payment of such claims.
>
> 3.     Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.
>
> 4.     An itemized statement of loss and expense incurred by the Surety, sworn to by an officer of Surety, shall be *prima facie* evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

(Plaintiff's Exhibit 1; Doc. No. 85-4 at PageID# 805.)  *See also* Tr. 7-9.

4.      West Bend's Agent, James Yert, testified that he personally witnessed Mr. Osmic

sign the Indemnity Agreement, both in his personal capacity as "Indemnitor (Individual)" and as an

authorized representative for Osmic, Inc.  (Tr. 43-45, 47-48.)  Mr. Yert explained that he had known

Mr. Osmic professionally for some time and testified, both upon questioning from counsel for West

11

Bend and from this Court, that he specifically recalled witnessing Mr. Osmic sign the Indemnity Agreement on April 4, 2017.  (Tr. 41-45, 47-48.)  The Court finds Mr. Yert's testimony to be credible.

5.      On April 25, 2018, Osmic, Inc. submitted its bid for the Lincoln West High School at MetroHealth Renovation Project (the "Project").  (Plaintiff's Exhibit 2.)  Osmic, Inc. was seeking to be the general contractor for the Project, which included HVAC and electrical work.  (Tr. 9-10.)

6.      Osmic, Inc.'s bid included Bid Guaranty and Contract Bond No. 28459754 for the Project, which was signed by Mr. Osmic as President of Osmic, Inc.  (Plaintiff's Exh. 2; Doc. No. 85-3 at PageID#s 789-790.)  The bond named Osmic, Inc. as Principal and MetroHealth as Obligee, in a penal sum equivalent to the $130,636.00 MetroHealth Contract amount.  (Plaintiff's Exh. 2; Doc. No. 85-3 at PageID#s 784-785, 789-790, 795)  The Bond guaranteed Osmic, Inc.'s performance of the MetroHealth Contract, including its obligation to pay its subcontractors.  (Plaintiff's Exh. 2.)

7.      On May 15, 2018, Osmic, Inc. was awarded the contract for the Project (hereinafter "the MetroHealth Contract."). (Plaintiff's Exh. 3; Tr. 10.)

8.      On or about May 23, 2018, West Bend issued another Bid Guaranty and Contract Bond No. 2385846 for the Project (collectively the "Bonds").[8]  (Plaintiff's Exhibit 4.)  Ms. Seidler testified that West Bend relied upon the Indemnity Agreement in the Rapid Bond Application when it issued the Contract Bond for the MetroHealth project.  (Tr. 11.)

9.      In November 2018, TES Engineering prepared a Field Observation Report regarding "state of completion of [the MetroHealth Project] and items to be corrected or completed." (Plaintiff's Exh. 5; Tr. 12.)  The Field Observation Report found numerous deficiencies with the

---

[8] Ms. Seidler explained that the two bonds have different numbers because when a "bid bond" (i.e., Plaintiff's Exh. 3) is converted into a contract bond (i.e.,. Plaintiff's Exh. 4), the contract bond gets a new bond number.  (Tr. 11.)  She further testified that, other than the numbers, the two bonds (i.e. Bond Nos. 28459754 and 2385846) are identical.  (*Id.*)

mechanical and electrical scopes of work, including several which related to health and safety issues (such as missing fire alarms, damage to existing fireproofing, and missing insulation).  (*Id.*)

10.     On December 18, 2018, MetroHealth made a bond claim against West Bend, on the grounds that Osmic, Inc. had used incorrect materials for the Project.  (Plaintiff's Exh. 6; Tr. 13.)

11.     On January 3, 2019, Ms. Seidler sent an email to Mr. Osmic, advising that she had received a claim on the bond from MetroHealth.  (Plaintiff's Exh. 7; Tr. 13-14.)  Ms. Seidler stated that she "needed to know if you are going to correct the defects, or whether you have any objection or defense to the claim by MetroHealth."  (*Id.*)  Ms. Seidler further indicated that she understood there to be an unpaid supplier, Leff Electric Company, which was owed $8,643.38.  (*Id.*)  Ms. Seidler asked Mr. Osmic to contact her to discuss the matter.  (*Id.*)  Ms. Seidler credibly testified that neither Mr. Osmic nor anyone else from Osmic, Inc. responded to her email.  (Tr. 14.)

12.     West Bend's records also indicate that Osmic, Inc. failed to pay another subcontractor, Corporate Floors, Inc. ("Corporate Floors"), for work performed on the Project. (Plaintiff's Exh. 8.) As a result, Corporate Floors made a bond claim in the amount of $6,490.00 against West Bend. (Plaintiff's Exh. 8; Tr. 14.)

13.     Ms. Seidler testified that, after MetroHealth made its bond claim in December 2018, MetroHealth agreed to try to give Osmic, Inc. a "second chance."  (Tr. 15-16.)  Specifically, MetroHealth tried to meet with Mr. Osmic a number of times to address the deficiencies in Osmic, Inc.'s work but Mr. Osmic repeatedly cancelled meetings and otherwise failed to take any action to complete performance and/or remedy the default.  (*Id.*; Plaintiff's Exh. 9.)  Ms. Seidler testified that, in all, MetroHealth gave Mr. Osmic a period of nine (9) months to correct Osmic, Inc.'s deficient work but that he failed to do so.  (Tr. 17-18; Plaintiff's Exh. 10.)

14. Thus, on September 11, 2019, MetroHealth advised West Bend that it wished to proceed with an official bond claim. (Plaintiff's Exh. 9; Tr. 16.) MetroHealth further advised that it planned to begin the process of getting an estimate from a trusted contractor to finish the Project. (*Id.*)

15. Ms. Seidler testified that West Bend received a number of estimates from MetroHealth to complete the Project that "seemed higher than what we'd expected." (Tr. 20.) At that point, West Bend retained outside counsel (the law firm of Frantz Ward in Cleveland, Ohio) for assistance. (Plaintiff's Exh. 12; Tr. 20.) Ms. Seidler testified that West Bend's attorneys at Frantz Ward proceeded to retain a third-party consultant, J.S. Held, to perform an analysis of the Project job site and to provide West Bend with a scope of work and estimate. (Plaintiff's Exh. 12; Tr. 20-21.)

16. West Bend paid J.S. Held a total of $11,229.85 for its work. (Tr. 21.) Ms. Seidler testified that this was a fair and reasonable amount for the services that J.S. Held performed. (*Id.*) The Court finds Ms. Seidler's testimony to be credible.

17. West Bend thereafter directed J.S. Held to obtain fair market pricing to complete and correct Osmic's work. Ms. Seidler testified that J.S. Held obtained the following bids to finish and correct Mr. Osmic's work on the Project: (1) a proposal from Relmec Mechanical in the amount of $94,600.00; (2) a proposal from Cline Mechanical with a base bid in the amount of $92,750; and (3) a proposal from Regency Construction Services in the amount of $134,887. (Plaintiff's Exhs. 13, 14, 15; Tr. 21-22.)

18. West Bend subsequently reached a settlement with MetroHealth, which required West Bend to issue payment to MetroHealth in the sum of $92,750.00 to resolve its claim on the

Bonds.  (Plaintiff's Exhibit 18.)  In other words, West Bend agreed to pay a sum which reflected the lowest of the three proposals, i.e. the Cline Mechanical proposal.[9]  (Tr. 24.)

19.     West Bend also resolved Corporate Floors bond claim of $6,490.00 via payment to Corporate Floors in the amount of $2,000.00.  (Plaintiff's Exhibit 16; Tr. 22-23.)

20.     On February 8, 2021, West Bend (through outside counsel) sent a demand to Mr. Osmic for indemnity and reimbursement of loss and expense under the Indemnity Agreement. (Plaintiff's Exh. 19.)   Therein, West Bend demanded the total amount of $123,895.35 (which represented the $92,750 payment to MetroHealth to resolve its bond claim plus expenses in the amount of $31,145.35 as of the date of the demand letter).  (Plaintiff's Exh. 19; Tr. 24-25.)

21.     Ms. Seidler testified that Osmic failed and/or refused to pay and, therefore, West Bend was forced to file the instant lawsuit on March 12, 2021.  (Tr. 25.)

22.     Ms. Seidler testified regarding the attorney fees and expenses that West Bend has incurred in connection with Mr. Osmic's failure to either correct his deficient work and/or provide indemnification under the Indemnity Agreement.  (Tr. 25-26.)  The invoices are from West Bend's outside counsel, Frantz Ward (hereinafter "Frantz Ward Invoices") and were admitted into evidence as Plaintiff's Exhibit 20.  (Plaintiff's Exh. 20; Tr. 25-26.)  They span a five year period from November 7, 2019 to December 5, 2024 and reflect a total of 433.9 hours of work by Frantz Ward attorneys and paralegals.  (*Id.*)  As part of Plaintiff's Exhibit 20, West Bend also submitted an

---

[9] Ms. Seidler testified that MetroHealth had asked West Bend to pay $126,000 for the completion and repair of Mr. Osmic's work.  (Tr. 23.)  Relying on the proposals obtained by J.S. Held, West Bend was able to settle MetroHealth's bond claim for the considerably lower sum of $92,750.00.  (Tr. 23-24.)  Ms. Seidler explained, given his indemnity obligation, Mr. Osmic was the beneficiary of West Bend's negotiations with MetroHealth.  (Tr. 24.)

"Invoice Summary Report," which shows that that Frantz Ward was paid the total amount of $104,365.36 during this five year time period.  (*Id*.)

23.     The Frantz Ward Invoices reflect that several different paralegals, associates, and partners worked on this matter for West Bend over the years.  The paralegals billed at an hourly rate of $210/hour.  The associates billed at hourly rates between $255 - $300/hour, and the partners billed at $300/hour.[10]  *See* Plaintiff's Exh. 20.

24      Ms. Seidler testified that, in the course of her work as a Senior Attorney for West Bend, she has had the opportunity over the last 15 years to oversee litigation in twenty (20) states, including Ohio.  (Tr. 30-31.)  Notably, Ms. Seidler testified that, prior to the instant action, she evaluated fee bills from attorneys in the Cleveland, Ohio area.  (Tr. 31.)  Ms. Seidler explained that, based on her knowledge and experience, the hourly rates charged by Frantz Ward in this action are reasonable.[11]  (Tr. 26, 31-32.)

25.     Ms. Seidler further testified that, as a Senior Attorney for West Bend, it is her responsibility to actually look at and review the attorney fee bills that are submitted to West Bend for payment.  (Tr. 33.)  Ms. Seidler confirmed that she personally audited the Frantz Ward Invoices in

---

[10] Based on a review of the Frantz Ward Invoices, partners working on this matter included Attorneys Nora Loftus, Mark Rodio, Melissa Jones, and Marc Sanchez.  These partners generally billed at $300/hour.  The Court did find three invoices which reflect that Attorney Sanchez billed West Bend at an hourly rate of $515/hour for (1) 18.90 hours on February 6, 2024; (2) .90 hours on March 6, 2024; and (3) 4.10 hours on April 24, 2025. (Plaintiff's Exh. 20.) As discussed *infra*, however, it appears from the Frantz Ward Invoices that West Bend did not pay the full amounts invoiced during those months, suggesting that West Bend negotiated a lower rate for Attorney Sanchez's work on this matter.  (*Id*.)

[11] Ms. Seidler testified that the average hourly rate at Frantz Ward was $250/hour, which she testified is lower than the rates being charged during the same approximate time period by another law firm in Cleveland, Ohio that West Bend had used in the past (the law firm of Meyers Roman, which billed at $270/hour).  (Tr. 32.)

the instant action.[12]  (*Id.*)  She testified that, based on her review of these Invoices, she "absolutely believes" that the work performed by Frantz Ward was necessary for the pursuit of the instant action. (*Id.*)  Ms. Seidler also testified that, based upon her experience in evaluating fee bills in the context of surety bond disputes, the amount of the Frantz Ward Invoices are, in part, attributable to delays by Mr. Osmic.  (Tr. 34-35.)  The Court finds Ms. Seidler's testimony to be credible.

26.     Based on the above, the Court finds that, as a direct and proximate result of Mr. Osmic's failures to either remedy his deficient work and/or indemnify West Bend, West Bend has incurred losses under the Indemnity Agreement totaling $210,345.21; i.e., (1) $94,750.00 in bond claim payments to MetroHealth and Corporate Floors (Plaintiff's Exhs 16 and 18); (2) $11,229.85 for J.S. Held consulting fees (Plaintiff's Exhibit 12); and (3) $104,365.36 in attorneys' fees (Plaintiff's Exhibit 20).

## III.    Conclusions of Law

### A.     Breach of Contract/Contractual Indemnification (Count I)

In Count I, West Bend alleges a claim for breach of contract and contractual indemnification based on Mr. Osmic's breach of the Indemnity Agreement when he failed to indemnify West Bend from the losses it incurred in connection with its issuance of the Bond.  (Doc. No. 1 at ¶¶ 20–27.)

In its updated Trial Brief, and during closing argument, West Bend argued as follows.  West Bend asserts that the evidence has "established that Mr. Osmic breached the Indemnity Agreement he signed in order to obtain construction surety bonds from West Bend."  (Tr. 52.)  *See also* Doc. No.

---

[12] Ms. Seidler's testimony is supported by this Court's own careful review of the Frantz Ward Invoices.  Specifically, the Court found that, on at least seventeen (17) occasions, West Bend did not pay the full amount invoiced by Frantz Ward but, rather, paid a (sometimes significantly) reduced amount.  (Plaintiff's Exh. 20.)  Taking these Frantz Ward Invoices in conjunction with Ms. Seidler's testimony, the Court finds credible Ms. Seidler's testimony that she carefully reviewed and audited Frantz Ward's Invoices, "line by line." (Tr. 33.)

120 at PageID#s 1262-1263. West Bend maintains that a contract exists between the parties, as demonstrated by Mr. Yert's testimony that he personally witnessed Mr. Osmic sign the Indemnity Agreement on April 4, 2017, in both his personal capacity and as the authorized representative of Osmic, Inc.  (*Id.*)  West Bend notes that Osmic, Inc. submitted the bid for the Project in April 2018 and was awarded the MetroHealth Contract in May 2018, which had a penal sum equivalent to the contract value of $130,636.  (Tr. 53-54.)  West Bend asserts that the evidence shows that West Bend then converted the original Bid Guaranty and Bond into the Contract Bond that was introduced into the record as Plaintiff's Exhibit 4.  (*Id.*)  Relying on Ms. Seidler's testimony and the Exhibits introduced at trial, West Bend maintains that the evidence and testimony clearly establishes that Osmic, Inc. failed to fully and adequately perform the MetroHealth Contract.  (Tr. 54-55.)  West Bend asserts that Mr. Osmic then breached the Indemnity Agreement by failing to indemnify West Bend for its losses under that Agreement, despite West Bend's repeated demands that he do so.  (*Id.*) Lastly, West Bend argues that the record fully demonstrates that West Bend has been damaged in the amount of $210,345.21 by Mr. Osmic's breach of the Indemnity Agreement.  (*Id.*)

As noted above, Mr. Osmic failed to either submit a Trial Brief or appear for the bench trial. Thus, Mr. Osmic has offered no response or opposition to West Bend's evidence and arguments.

The Court will address the issues of liability and damages under Count I separately, below.

### 1.    Liability

In Ohio,[13] "[i]ndemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987).  "In general, to indemnify is to make whole and has been defined to mean to save harmless by giving security for the reimbursement of a person in case of anticipated loss . . . ." *Id.*  "Courts interpret indemnity agreements the same way they interpret contracts." *Papatheodorou v. Clark*, 781 F.Supp.2d 582, 586 (N.D. Ohio 2011).  As the Ohio Supreme Court explained:

> The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. All words used must be taken in their ordinary and popular sense, [] and when a writing is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally presents.

*Worth*, 513 N.E.2d at 256 (internal citations, quotation marks, and original alterations omitted); *see also Glaspell v. Ohio Edison Co.*, 505 N.E.2d, 264, 267 (Ohio 1987) (noting that indemnity agreement should be construed such as "all the words used [must] be taken in their ordinary and popular sense").

Under Ohio law, a breach of contract occurs when: "(i) a party demonstrates the existence of a binding contract or agreement; (ii) the nonbreaching party performed its contractual obligations; (iii) the allegedly breaching party failed to fulfill its contractual obligations without legal excuse; and (iv) the nonbreaching party suffered damages as a result of the breach." *Phila. Indem. Ins. Co. v. Fox*, 2019 WL 2437442 at *2 (S.D. Ohio June 10, 2019) (citing *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926 (Ohio App. 4th Dist. 2007)).

---

[13] In a diversity case, federal courts apply the substantive law of the forum state.  *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).  Here, West Bend argues (and Mr. Osmic does not contest) that Ohio law applies.  (Doc. No. 120 at PageID# 1262.)  Therefore, and in the absence of any argument to the contrary, the Court applies Ohio law.

The Court first finds that the evidence introduced at the bench trial clearly establishes the existence of a binding contract of indemnification between West Bend and Mr. Osmic.  West Bend introduced the Rapid Bond Account Application and General Agreement of Indemnity as Plaintiff's Exhibit 1.  As set forth *supra*, the first page of the Indemnity Agreement sets forth the terms and conditions, including (among other things) that the "Undersigned" agrees to pay West Bend upon demand for "all loss and expense, including reasonably attorney's fees… incurred by [West Bend] by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned."  (Plaintiff's Exh. 1; Doc. No. 85-4 at PageID# 805.)  The second page of the Indemnity Agreement contains Mr. Osmic's signature, both in his personal capacity as an "Indemnitor (Individual)" and as the authorized representative of Osmic, Inc.  (*Id.* at PageID# 806.)

The Indemnity Agreement also requires the signature of a witness.  Mr. Yert was presented with Plaintiff's Exhibit 1 during the bench trial.  (Tr. 42.)  He testified that he was familiar with this Exhibit and identified it as a Rapid Bond Application.  (*Id.*)  Upon questioning both from counsel for West Bend and this Court, Mr. Yert testified, repeatedly, that he personally witnessed Mr. Osmic sign the Indemnity Agreement on April 4, 2017.  (Tr. 43, 44, 45, 46-47, 48.)  Mr. Yert also identified his own signature "as witness to the signature of Hugh Osmic."  (*Id.*)  Lastly, Mr. Yert expressly denied Mr. Osmic's allegation that Mr. Yert had forged his name on the Indemnity Agreement.  (Tr. 44-45.)

As Mr. Osmic did not submit a Trial Brief or appear at the bench trial, he did not offer any testimony, evidence, or argument to support his allegation (in his Brief in Opposition to West Bend's Motion for Summary Judgment) that the Indemnity Agreement is "fictitious" and/or that he "never signed" the Agreement.  (Doc. No. 97 at PageID#s 1080-1081; Doc. No. 97-2.)

Upon careful consideration, the Court finds that the evidence clearly establishes that Mr. Osmic signed the Indemnity Agreement, both in his personal capacity as "Indemnitor (Individual)" and as authorized representative of Osmic, Inc. Mr. Yert's testimony is credible. The Court questioned Mr. Yert carefully regarding his testimony that he witnessed Mr. Osmic sign the Indemnity Agreement and is satisfied, based on the content of his testimony and his demeanor, that Mr. Yert testified truthfully that he did, in fact, witness Mr. Osmic sign the Indemnity Agreement on April 4, 2017. Accordingly, and for all the reasons set forth above, the Court concludes that Mr. Osmic signed the Indemnity Agreement and that it therefore constitutes a binding contract between West Bend and Mr. Osmic in his personal capacity as "Indemnitor (Individual)."[14]

---

[14] The Bond, dated May 23, 2018, was not signed by either Mr. Osmic (for Osmic, Inc.) or West Bend. (Plaintiff's Exh. 4; Doc. No. 85-2 at PageID# 775.) A party's failure to sign a bond generally is insufficient for "execution" under Ohio law. *Williams v. Dewey*, 178 N.E.2d 808, 809 (Ohio App. 8th Dist. 1961) (defining "execute" in the civil bond context to mean "to complete or to perform what is required to give validity to an instrument, as being signed, sealed, and delivered" and that "signing" is "only a part of the execution of an instrument"). However, the Court concludes that it was not necessary for the parties to execute the Bond from May 23, 2018. As explained above, the evidence introduced at the bench trial establishes that Mr. Osmic and West Bend executed the Indemnity Agreement, which in relevant part provides that West Bend was to be indemnified from all loss and expense in connection with any Bond or Bonds for which [West Bend] (now *or hereafter*) *may issue* on behalf" of Osmic, Inc. (Plaintiff's Exh. 1; Doc. No. 85-4 at PageID# 805 emphasis added).) The Indemnity Agreement further provides that Mr. Osmic must indemnify West Bend for "[a]ll loss and expense, including reasonable attorney fees . . . incurred by [West Bend] by reason of having *executed* any Bond or incurred by it on account of any breach of this agreement by [Hugh Osmic]." (*Id.* (emphasis added).) Reading these two provisions together, it is clear that the Indemnity Agreement's provisions are *triggered* by the execution of a bond, after which Mr. Osmic must indemnify West Bend for all bonds *issued* (and not necessarily executed). Additionally, the evidence introduced at the bench trial establishes that West Bend and Hugh Osmic executed a bond bearing bond number 28459754 on behalf of Osmic, Inc. on April 22, 2018. (Plaintiff's Exh. 2; Doc. No. 85-3 at PageID#s 789–90.) The April 2018 Bond is substantively the same as the May 2018 Bond: it names Osmic, Inc. as principal, West Bend as surety, and MetroHealth as obligee, and provides that Osmic, Inc. and West Bend are bound to the dollar amount of Osmic, Inc.'s bid for the Project. (*Id.* at PageID# 789.) Accordingly, the parties' execution of the April 2018 Bond activated the Indemnity Agreement, and pursuant to the Indemnity Agreement, future bonds issued for Osmic, Inc. did not need to be executed for the Indemnity Agreement to apply to claims against them. As West Bend's Settlement Agreement with MetroHealth confirms, claims for the Project made upon the May 2018 Bond as well as upon the April 2018 Bond would apply to both. *See* Plaintiff's Exh. 18 (West Bend's settlement with MetroHealth's bond claim against "the Bond," defined as bonds "bearing Bond Nos. 2385846 and/or 228459754").)

21

The Court must next interpret the Indemnity Agreement to discern Mr. Osmic's obligations under it and whether Mr. Osmic breached those obligations.  "[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court."  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008); *see Ohio Hist. Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 345 (Ohio App. 10th Dist. 1989).  It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement."  *Savedoff,* 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)).  *See also U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio App. 2d Dist. 1998). "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument."  *Alexander v. Buckeye Pipe Line Co*, 374 N.E.2d 146, 150 (Ohio 1978).  "The [c]ourt must look to the plain language of the contract, and only go beyond the plain language of the agreement to determine the rights and obligations of the parties if it is ambiguous."  *Airlink Communs., Inc. v. Owl Wireless, LLC*, 2011 WL 4376123 at *2 (N.D. Ohio Sept. 20, 2011) (internal citations omitted).

"Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations."  *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio App. 10th Dist. 2003) (citation omitted).  *See also Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009).  "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract."  *Covington*, 784 N.E.2d at 190.  In determining whether contractual language is ambiguous,

22

the contract "must be construed as a whole," *Tri-State Grp., Inc. v. Ohio Edison Co*., 782 N.E.2d 1240, 1246 (Ohio App. 7th Dist. 2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 197 N.E. 923, 926 (Ohio App. 5th Dist. 1934)), so as "to give reasonable effect to every provision in the agreement," *Stone v. Nat'l City Bank*, 665 N.E.2d 746, 752 (Ohio App. 8th Dist. 1995). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *JBlanco Enters. v. Soprema Roofing & Waterproofing, Inc.*, 2016 WL 6600423 at *4 (N.D. Ohio Nov. 8, 2016) (citation omitted).

For the following reasons, the Court concludes that the terms of the Indemnity Agreement providing that Mr. Osmic must indemnify West Bend for the losses it suffered on Osmic, Inc.'s behalf as part of the Project are clear and unambiguous and should therefore be enforced. As noted *supra*, the Indemnity Agreement provides, in relevant part, that Mr. Osmic agrees to pay West Bend upon demand for "[a]ll loss and expense[] . . . and reasonable attorney's fees incurred in connection with collection of said loss and expense . . . incurred by [West Bend] by reason of having executed any Bond or incurred by it on account of any breach of this agreement by [Hugh Osmic]." (Plaintiff's Exh. 1; Doc. No. 85-4 at PageID# 805.) The Indemnity Agreement "can be given a single, definite legal meaning," and is therefore unambiguous as a matter of law. *Cleveland Clinic Health System-East Region v. Innovative Placements, Inc*., 2012 WL 1998049 at *2 (N.D. Ohio June 4, 2012). Specifically, a plain and ordinary reading of the Indemnity Agreement, accompanied by the Rapid Bond Account Application, demonstrates that Mr. Osmic agreed to indemnify West Bend for all losses and expenses that West Bend would incur "in connection with" the Bond. (Plaintiff's Exh. 1; Doc. No. 85-4 at PageID# 805.) Thus, if West Bend suffered any loss or expense relating to its execution of Osmic, Inc.'s Bond for the Project, per the unambiguous terms of the Indemnity

Agreement, Mr. Osmic must indemnify West Bend for such loss or expense.  *See All Pro Brace, LLC v. U.S. Dep't of Health & Hum. Servs.*, 2023 WL 7166890 at *6 (N.D. Ohio Oct. 31, 2023) (finding that indemnity agreement unambiguously provided that indemnitors must indemnify surety for "all losses" incurred "in connection with" relevant bonds).

Because the Indemnity Agreement is unambiguous, the Court next considers whether it requires Mr. Osmic to indemnify West Bend in this case; that is, whether West Bend's claimed losses were incurred "in connection with" the Bond for the Project.  For the following reasons, the Court concludes that the evidence introduced at the bench trial clearly establishes that West Bend's claimed losses were incurred "in connection with" the Bond for the MetroHealth Project.

As noted above, TES Engineering conducted a final field observation of the Project in November 2018 during which it identified twenty-four (24) deficiencies with Osmic, Inc.'s mechanical work and seven (7) deficiencies with Osmic, Inc.'s electrical work on the Project. (Plaintiff's Exh. 5; Tr. 12-13.)  Ms. Seidler confirmed during her testimony that several of these deficiencies related to health and safety issues, which was particularly concerning as the site of the Project was a school.  (Tr. 12-13, 17.)  MetroHealth made a claim on the Bond in December 2018, which required West Bend to investigate.  (Plaintiff's Exh. 6; Tr. 13.)  In the course of its investigation, West Bend discovered that there were two subcontractors who alleged that they had not been paid by Osmic, Inc., i.e., Leff Electrical and Corporate Floors.  (Plaintiff's Exhs, 7, 8; Tr. 13-14.)  When Osmic, Inc. repeatedly failed to remedy its incomplete and deficient work on the Project, West Bend retained counsel (Frantz Ward) and a third-party consultant (J.S. Held) to investigate and verify MetroHealth's claim that Osmic, Inc.'s work was deficient, eventually confirming that it was.  (Plaintiff's Exh. 12; Tr. 20.)  Ms. Seidler also testified that West Bend retained

J.S. Held for the additional reason that several of the estimates it had received from MetroHealth to complete the work "seemed higher" that West Bend had expected. (Tr. 20.) At West Bend's request, J.S. Held procured three bids (from Relmec Mechanical, Cline Mechanical, and Regency Construction Services) to finish and correct Osmic, Inc.'s work. (Plaintiff's Exhs. 13, 14. 15; Tr. 20-22.)

Ultimately, West Bend chose the least expensive of these bids (i.e., the bid from Cline Mechanical for $92,750.00) and reached a settlement with MetroHealth on its bond claim for that amount. (Plaintiff's Exhs. 14, 18; Tr. 24.) West Bend then had to compensate J.S. Held in the amount of $11,229.85 for its investigation and work. (Tr. 21.) Ms. Seidler also testified that it had to settle Corporate Floor's bond claim, which it did for the amount of $2,000. (Plaintiff's Exh. 16; Tr. 22-23.) After Mr. Osmic refused to reimburse West Bend for these payments, West Bend brought suit in part against Mr. Osmic for its indemnity and has litigated the instant case for the past four years. (Tr. 24-25.)

In light of the above, the Court concludes that the evidence introduced at bench trial clearly establishes that West Bend's payments to MetroHealth, Corporate Floors, J.S. Held, and its attorneys in this case are readily traceable to the Bond and the MetroHealth Contract to which it applies. *See All Pro Brace,* 2023 WL 7166890 at *8. Accordingly, the Court concludes that the Indemnity Agreement expressly applies to West Bend's $92,750.00 payment to MetroHealth; $2,000 payment to Corporate Floors; and $11,229.85 payment to J.S. Held, as well as the attorney's fees and costs incurred by West Bend in connection with the Bond. Lastly, the Court further finds that the evidence clearly establishes that Mr. Osmic breached the Indemnity Agreement by failing and refusing to

indemnify West Bend for the above losses, despite West Bend's repeated demands for indemnification.  (Plaintiff's Exhs. 7, 19; Tr. 24-25.)

### 2.    Damages

Because Hugh Osmic must indemnify West Bend for its losses, the final issue for resolution is the total amount of damages owed.  As discussed above, West Bend has presented evidence that it retained Frantz Ward as outside counsel and paid $11,229.85 to J.S. Held to investigate and verify MetroHealth and Corporate Floors's claims against the Bond, and complete and correct Osmic, Inc.'s work.  (Plaintiff's Exh. 12; Tr. 20-22, 24-25, 27.)  West Bend has also demonstrated that it settled MetroHealth's claim against the Bond for $92,750.00.  (Plaintiff's Exh. 18; Tr. 24, 27.)  Further, West Bend has presented evidence that it paid Corporate Floors $2,000.00 to settle its claim against the Bond.  (Plaintiff's Exh. 16; Tr. 22-23, 27.)  After these payments, and after Osmic, Inc. and Mr. Osmic refused to indemnify West Bend, West Bend brought this suit to recover against Osmic, Inc. and Mr. Osmic, leading it to incur attorney's fees and costs totaling $104,365.36.  (Plaintiff's Exh. 20; Tr. 25-26.)  Therefore, in total, West Bend asserts that it has incurred $210,345.21 in losses related to the bond for which Mr. Osmic must indemnify West Bend.  (Tr. 27.)

Mr. Osmic did not appear at the bench trial and, therefore, has not come forward with any testimony or evidence contesting any of West Bend's evidence regarding its damages.

The Indemnity Agreement provides:

> An itemized statement of loss and expense incurred by [West Bend], sworn to by an officer of [West Bend], shall be *prima facie* evidence of the fact and extent of the liability of [Osmic, Inc.] to [West Bend] in any claim or suit by [West Bend] against [Osmic, Inc.].

(Plaintiff's Exh. 1; Doc. No. 85-4 at PageID# 805.)  The plain and ordinary meaning of this provision indicates that evidence of West Bend's payments, losses, and expenses as Osmic, Inc.'s surety for the

Bond are evidence of the fact and extent of Osmic, Inc.'s, and therefore Mr. Osmic's (as indemnitor), liability to West Bend. (*Id.*)  As noted above, there is no dispute that West Bend issued payments totaling $94,750.00 to MetroHealth and Corporate Floors to resolve their claims against the Bond, and paid J.S. Held $11,229.85 in the pursuit thereof.  Nor is there any dispute that Mr. Osmic has failed to reimburse West Bend. Therefore, the Court finds that West Bend's payments to MetroHealth, Corporate Floors, and J.S. Held constitute evidence that Hugh Osmic is obligated to indemnify West Bend for its direct losses incurred in connection with the Bond in the amount of $105,979.85.

As to attorney's fees and other costs, the Indemnity Agreement allows for indemnification in the form of attorney's fees where the attorney's fees are incurred in connection with the Bond.  The only question, therefore, is whether the requested attorney's fees are reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "'The most useful starting point for determining the amount of a reasonable fee' is the lodestar method." *Thomas v. GC Rests., LLC*, 2021 WL 4147818 at *3 (S.D. Ohio Sept. 13, 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (alteration omitted). "That figure is reached 'by multiplying the reasonable number of hours billed by a reasonable billing rate.'" *Id.* (quoting *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002)).  District courts have "broad discretion" when determining what constitutes a reasonable hourly rate for an attorney. *Dowling v. Litton Loan Serv. LP*, 320 Fed. Appx 442, 447 (6th Cir. 2009).  In determining a reasonable rate, a court may consider awards in analogous cases, *see Johnson v. Conn. Gen. Life. Ins. Co.*, 2008 WL 697639 at *5 (N.D. Ohio Mar. 13, 2008), as well as the court's own knowledge and experience in awarding attorney fees, *see Ousley v. Gen. Motors Ret. Program for Salaried Emps.*, 496 F.Supp.2d 845, 850 (S.D. Ohio 2006).

West Bend claims $104,365.36 in attorney's fees and expenses.  (Plaintiff's Exh. 20; Tr. 27.)  To support its claim for attorney's fees, West Bend relies on Ms. Seidler's testimony and the Frantz Ward Invoices.  (Plaintiff's Exh. 20; Tr. 25-27, 30-35.)  A review of Frantz Ward Invoices shows that West Bend's counsel performed a total of 433.90 hours of work in this matter.  (Plaintiff's Exh. 20.)  West Bend's attorney's and paralegal's hourly rates were (1) $210/hour for paralegals; (2) between $255 and $300/hour for associate attorneys; and (3) $300/hour for partners.[15]  (*Id.*)

After careful consideration of Ms. Seidler's testimony and the Frantz Ward Invoices, and in the absence of any opposition, the Court concludes that West Bend's requested attorney's fees and expenses are reasonable.  West Bend's requested hourly rate of between $255 and $300 per hour is reasonable for this case and is below what other courts in this District have found reasonable in actions involving breaches of contract.  *See, e.g.*, *Thirty Eight St., Inc. v. Chatur Corp.*, 2010 WL 2991510 at *4 (N.D. Ohio July 27, 2010) ($300 per hour reasonable where non-movant did not challenge attorney's fees award); *Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Local Union No. 24 v. Miller*, 2016 WL 6639137 at *1 (S.D. Ohio Nov. 9, 2016) (same); *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 2024 WL 1014027 at *3–4 (N.D. Ohio Mar. 8, 2024) (unopposed hourly rate of over $400 reasonable).  In so finding, the Court finds Ms. Seidler's testimony credible that the hourly rates charged by Frantz Ward in this action are reasonable based on her fifteen years of experience as a Senior Attorney for West Bend with responsibility for evaluating attorney fee bills in

---

[15] Frantz Ward's Feb. 6, 2024, March 6, 2024, and April 24, 2024 Invoices reflect that Attorney Sanchez billed West Bend $515/hour for 23.9 hours of work.  However, upon careful review of the Frantz Ward Invoices, it appears that West Bend did not pay the full amounts invoiced by Frantz Ward during those months, suggesting that West Bend negotiated a lower hourly rate for Attorney Sanchez's work.  (*Id.*) This is supported by the fact that all subsequent invoices (i.e., after April 2025) show that Attorney Sanchez billed West Bend at $300/hour.  (*Id.*)

20 states, including Ohio.[16]  (Tr. 26, 30-32.)  The Court also relies on its own experience in assessing attorney fee applications in connection with breach of contract actions in this District.

Additionally, the Court finds that the number of hours expended by West Bend's counsel is reasonable under the circumstances.  The Frantz Ward Invoices reflect that West Bend's counsel expended 433.90 hours over the course of the sixty-four (64) months since West Bend engaged Frantz Ward to investigate MetroHealth and Corporate Floors's claims against the Bond, to include forty-seven (47) months since West Bend filed its Complaint.  West Bend had to investigate and satisfy the claims against the Bond, demand reimbursement from Mr. Osmic, and prosecute this case against three Defendants for nearly four years. In this regard, the Court agrees with Ms. Seidler that the amount of the Frantz Ward Invoices are, in part, attributable to delays by Mr. Osmic.  (Tr. 34-35.) Specifically, the docket reflects that West Bend's counsel had to (1) make repeated attempts to serve all three Defendants; (2) respond to Mr. Osmic's and Kim Osmic's Motions to Set Aside Entry of Default; (3) respond to multiple Motions to Dismiss filed by both Mr. Osmic and Kim Osmic; (4) engage in written and deposition discovery; (5) prepare and file a Motion for Summary Judgment and Reply Brief in support thereof; (6) respond to, and monitor, Mr. Osmic's two meritless bankruptcy filings; (7) respond to, and monitor, Mr. Osmic's two meritless Notices of Appeal to the Sixth Circuit; (8) prepare for and participate in two Final Pretrial Conferences; (9) prepare two Trial Briefs; and

---

[16] Notably, Ms. Seidler testified that the average hourly rate at Frantz Ward was $250/hour, which she testified is lower than the rates being charged during the same approximate time period by another law firm in Cleveland, Ohio that West Bend has used in the past (the law firm of Meyers Roman, which Ms. Seidler testified charged $270/hour).  (Tr. 32.) and

(10) prepare for and participate in the bench trial.  Given this context and history, the Court finds that the hours billed by Frantz Ward in this matter are reasonable.[17]

Therefore, West Bend is entitled to a reasonable attorney's fees and expenses award in the total amount of $104,365.36.[18]  Combined with West Bend's $94,750.00 in payments made to satisfy MetroHealth and Corporate Floors's claims against the Bond and $11,229.85 paid to J.S. Held, the Court finds that West Bend is entitled to a total indemnity from Mr. Osmic in the amount of $210,345.21.

### 3.    Conclusion as to Count I

In sum, the Court concludes that the evidence introduced at the bench trial clearly shows that (1) Mr. Osmic signed the Indemnity Agreement in both his personal capacity and as authorized representative of Osmic, Inc.; (2) the Indemnity Agreement is a valid and binding contract between West Bend and Mr. Osmic in his personal capacity; (3) the unambiguous terms of the Indemnity Agreement require Mr. Osmic to indemnify West Bend for claimed losses that were incurred "in connection with" the Bond for the Project; (4) West Bend has, in fact, sustained losses in connection with the Bond (as set forth above), and (5) Mr. Osmic has failed to uphold his obligation and indemnify West Bend, thereby breaching the Indemnity Agreement.  The Court also concludes that

---

[17] The Court also notes in this regard that, at the conclusion of the bench trial, the Court provided West Bend the opportunity to submit a supplement to request attorney's fees and expenses incurred subsequent to Frantz Ward's December 5, 2024 Invoice.  (Tr. 56.) This would have included attorney's fees relating to Frantz Ward's preparation for and participation in the bench trial, as well as Ms. Seidler's expenses in flying in from Madison, Wisconsin for the trial. (Tr. 5, 56-57.)  After consultation with Ms. Seidler, Attorney Sanchez indicated that West Bend had elected to forego filing an additional affidavit/supplement to its request for attorney's fees and costs.  (Tr. 57.)

[18] The Court notes that the total amount sought by West Bend (i.e., $104,365.36) also includes amounts billed by Frantz Ward to West Bend for expenses for (among other things) the filing of the Complaint, certified and Fed Ex mail sent to the Defendants, Lexis Nexis legal research, and a witness fee/mileage to Mr. Yert.  (Plaintiff's Exh. 20.)  Upon careful review (and in the absence of any argument to the contrary), the Court finds that West Bend's request for expenses is also reasonable.

West Bend has incurred $105,979.85 in direct losses in connection with West Bend's acting as surety for the Bond, and $104,365.36 in attorney's fees and expenses related to West Bend's execution of the Bond.  Accordingly, the Court finds that West Bend is entitled to judgment in its favor against Mr. Osmic on Count I of the Complaint in the total amount of $210,345.21.

    **B.**     **Declaratory Judgment (Count III)**

In Count III, West Bend asserts that it is entitled to a declaratory judgment that Mr. Osmic "must indemnify West Bend from and against any and all Losses, which West Bend has incurred or may incur in the future as a result of its issuance of the Bond or enforcement of its rights or the Defendants' obligations under the Indemnity Agreement."  (Doc. No. 1 at ¶ 31.)  For all the reasons set forth *supra* in connection with Count I, and in the absence of any argument to the contrary from Mr. Osmic, the Court finds that West Bend is entitled to a declaratory judgment in its favor against Mr. Osmic as set forth in Count III of the Complaint.

**IV.**     **Conclusion**

After careful consideration of the testimony and evidence, the Court finds that West Bend is entitled to judgment in its favor against Mr. Osmic as follows. West Bend is entitled to judgment in its favor on Count I of the Complaint in the total amount of $210,345.21, and is entitled to a declaratory judgment in its favor as set forth in Count III of the Complaint.

    **IT IS SO ORDERED.**

                               *s/Pamela A. Barker*
                               PAMELA A. BARKER

Date:  February 19, 2025                U. S. DISTRICT JUDGE